IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK F. SCHULTZ and | § | |
| LANDMARK CONSOLIDATED, INC. | § | CIVIL ACTION NO. A-17-cv-1088 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| JOHN ACKER, and, | § | |
| MIRACLE STRIP HOLDINGS, X, LLC | § | |
| | § | |
| Defendants. | § | |

**ANSWER TO ORIGINAL COMPLAINT AND COUNTERCLAIMS
BY DEFENDANTS JOHN ACKER AND MIRACLE STRIP HOLDINGS X, LLC**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants John Acker ("Acker") and Miracle Strip Holdings X, LLC ("Miracle Strip")(jointly and severally, "Defendants")  file their Answer to the Original Complaint filed on November 16, 2017 [Doc. 1](the "Complaint") by plaintiffs Mark F. Schultz ("Schultz") and Landmark Consolidated, Inc. ("Landmark") as follows:

**RESPONSES TO ALLEGATIONS IN THE COMPLAINT**

**I.      THE  PARTIES**

1.      Defendants admit the allegations in paragraph 1 of the Complaint.

2.      Defendants admit the allegations in paragraph 2 of the Complaint.

3.      Defendants admit the allegations asserted in paragraph 3 of the Complaint.

4.      Defendants admit the allegations asserted in paragraph 4 of the Complaint.

**II.      JURISDICTION**

5.      Defendants admit the allegations in paragraph 5 of the Complaint.

**III.   VENUE**

6.      Defendants admit the allegations in paragraph 6 of the Complaint.

## IV. CONDITIONS PRECEDENT

7.      Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of each and every allegation in paragraph 7 of the Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

## V.      FACTS

8.      Defendants deny each and every allegation of paragraph 8 of the Complaint, except that Defendants admit that Schultz had a communications with Desi Arellano ("Arellano") in February 2017 and aver that Arellano contacted Schultz to introduce the concept that Schultz engage in developments in which Arellano would do the concrete work and Acker and Miracle Holdings would find investors for the developments.

9.      Defendants knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 9 of the Complaint and those allegations are therefore deemed denied under FRCP 8(b) (5), except that Defendants admit: (a) Arellano owns a concrete finishing company which did work for Schultz at some point in time; and (b) Acker is Arellano's step son-in-law.

10.      Defendants deny each and every allegation in paragraph 10 of the Complaint, as stated. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties. Defendants admit: (a) Arellano, Acker, and Schultz had a phone call in the first quarter of 2017; (b) during that phone call, Acker truthfully informed Schultz that Acker had worked closely with Wayne Rogers over a long period of time; and (c) during that phone call, Acker truthfully informed Schultz that Acker was doing business with Gabriel Silverstein. Defendants further aver that Plaintiff's allegations in paragraphs 8 and 9 of the Complaint that Schultz was contacted by Arellano and spoke to him in in February 2017 and that the conversation alleged in

paragraph 10 of the Complaint took place on February 22, 2017 is contradicted by an email from Schultz to Wanda Harkness (and forwarded to Acker on June 26, 2017), in which Schultz states: "I was introduced to John Acker by Desi Arellano the last week of March of this year."

11.     Defendants presently lack knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 11 of the Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

12.     Defendants deny each and every allegation of paragraph 12 of the Complaint, except that Defendants admit: (a) on March 28, 2017 Jeff Lehman on behalf of Miracle Strip sent a text to set up a telephone call between Jeff Lehman and John Acker on behalf of Miracle Strip, Desi Arellano, Schultz on behalf of Landmark (Mr. Schultz' operating company), and Greg Aclin on behalf of Medistar Corporation; and (b) a conference call was held by the foregoing in which Schultz and Landmark were introduced to Aclin and Medistar (and *vice versa*) and the participants discussed possible real estate investment opportunities between Medistar and Landmark. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.

13.     Defendants deny each and every allegation of paragraph 13 of the Complaint, as stated. Defendants admit that a written Confidentiality and Non-Circumvention Agreement was executed by Miracle Strip and Landmark effective as of March 30, 2017 and respectfully refer the Court to the contents thereof.

14.     Defendants deny each and every allegation of paragraph 14 of the Complaint, as stated. Defendants admit that Acker and Schultz had a phone conversation on April 11, 2017.

15.     Defendants deny each and every allegation of paragraph 15 of the Complaint, except that Defendants admit that Acker met with Schultz in person for the first time on April

12, 2017 at the restaurant of the Four Seasons Hotel in Austin, Texas.

16.     Defendants deny each and every allegation of paragraph 16 of the Complaint, except Defendants admit that (a) Schultz provided Acker a $70,000 check drawn on Schultz' personal bank account and payable to Acker personally; and (b) Acker and Schultz agreed that Acker would pay such sum back personally, but neither Acker nor Schultz agreed to a specific deadline for Acker to do so nor the specific amount of interest which would be paid.

17.     Defendants deny each and every allegation in paragraph 17 of the Complaint, except Defendants admit that on April 14, 2017 Schultz wired $38,000 from Schultz's personal bank account to Acker's personal bank account.

18.     Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of  the allegations in paragraph 18 of the Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).   Defendants aver that Acker assured Schultz that the $108,000 would be repaid by Acker, but the parties did not discuss any deadline or other specifics concerning the repayment.

19.     Defendants deny each and every allegation of paragraph 19 of the Complaint. Defendants admit that, among many other topics in many phone calls, Acker and Schultz discussed the nature of Acker's business, which is to locate end users of real estate who wish to do sale-leasebacks, locate potential investors in those transactions, lock in the transaction for a specific purchase and re-sale price, and earn the profit from the spread at a simultaneous closing. The potential buyer, not Acker, fronts the money for the deposits required for the purchase contract.  Defendants admit that, in at least one phone call with Schultz, Acker discussed his pursuit of a possible sale-leaseback opportunity involving Residence at Bluewater in Niceville, Florida, but Acker did not ask for money from Schultz for a direct investment in that transaction. All monies at issue in this suit were requested by Acker from Schultz as personal loans to Acker,

to be used for personal expenses.  Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.

20.     Defendants deny each and every allegation of paragraph 20 of the Complaint.

21.     Defendants deny each and every allegation of paragraph 21 of the Complaint, except Defendants admit that on April 19, 2017 Schultz wired $75,000 from Schultz's personal bank account to Acker's personal bank account for a personal loan.

22.     Defendants deny each and every allegation of paragraph 22 of the Complaint, except Defendants admit that Schultz advanced the money to Acker for Acker's personal use (a fact acknowledged in the Complaint by its use of the phrase "entrusted in him for his own personal use") and that the money was not placed into a trust account (because it was not required to be and earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

23.      Defendants deny each and every allegation of paragraph 23 of the Complaint, except that Defendants admit that Acker met with Schultz in person on April 25, 2017 at the restaurant of the Four Seasons Hotel in Austin, Texas and that among the topics of conversation were potential sale-leaseback opportunities involving two Hicks Ventures rehabilitation facilities in El Paso, Texas and Fargo, North Dakota.  Defendants deny that Acker asked Schultz for money to be used as an earnest money deposit for that potential opportunity.  Defendants admit that Acker asked Schultz for a personal loan to be used for Acker's personal expenses.

24.     Defendants deny each and every allegation of paragraph 24 of the Complaint.

25.     Defendants deny each and every allegation of paragraph 25 of the Complaint, except Defendants admit that on April 26, 2017 Schultz wired $100,000 from Schultz's personal bank account to Acker's personal bank account and aver that the money was wired to Acker for

Acker's personal use.

26.    Defendants deny each and every allegation of paragraph 26 of the Complaint. Defendants aver that Schultz advanced the money to Acker for Acker's personal use (a fact acknowledged in the Complaint by its use of the phrase "or his own $100,000") and admit that the money was not placed into a trust account (because it was not required to be and because earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

27.    Defendants deny each and every allegation of paragraph 27 of the Complaint as stated.  Defendants admit that, among many other topics in many phone calls,  Acker and Schultz discussed in at least one phone call a prospect Acker had been working on for  many months involving a possible sale-leaseback transaction for four memory care facilities in Niceville, Lecanto, Cala Hills, and Brandon Florida owned by Superior Residences, Inc.  Defendants did not ask Schultz to advance any money directly for an earnest money deposit for that possible transaction. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.

28.    Defendants deny each and every allegation of paragraph 28 of the Complaint.

29.    Defendants deny each and every allegation of paragraph 29 of the Complaint, except Defendants admit that on May 1, 2017 Schultz wired $150,000 from Schultz's personal bank account to Acker's personal bank account and aver that the money was wired to Acker for Acker's personal use (a fact acknowledged in the Complaint through its use of the phrase "or his $150,000").  Defendants admit that the money was not deposited as earnest money (because it was not required to be and because earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

30.     Defendants deny each and every allegation of paragraph 30 of the Complaint, as stated.  Defendants admit that a written letter of intent (the "Proposed LOI") was executed on May 1, 2017 by HV Development, LLC denominating "Buyer" to be "Miracle Strip Holdings X, LLC (including John Acker, Marl Schultz, Landmark Consolidated and Zenith America Corporation), their assigns and/or Affiliates (defined below)."  Defendants respectfully refer the Court to the Proposed LOI for the contents thereof, including without limitation the statement in paragraph 14 thereof that the Proposed LOI is "not a binding commitment or agreement between the parties to purchase or sell the properties" and "does not obligate the parties to proceed to an agreement."

31.     Defendants deny each and every allegation in paragraph 31 of the Complaint, as stated.  Defendants admit that Schultz sent an email on May 2, 2017 at 1:06am (CST) to Jeff Lehman with a copy to Acker.   Defendants respectfully refer the Court to the email itself for the contents thereof,  including without limitation ) the false statement that Schultz had made wire transfers of $325,000 "to your company" (when all wires sent by Schultz had been made to Acker's personal account); and (b)  the request for identification of "the three contracts for which this earnest money was deposited, . . . dates the earnest money was  deposited, [and] dates when the earnest money goes hard" (which directly contradicts the allegations in the Complaint that Schultz sent the wires based on an understanding that "in no event would the earnest money become nonrefundable or be at risk of being forfeited without Mr. Schultz's approval." Defendants aver that Schultz wrote this late night/early morning email to begin to "paper" a narrative that the wires were sent as earnest money deposits for investments by Landmark and not for what they were actually sent (as personal loans by Schultz to Acker).

32.     Defendants deny each and every allegation of paragraph 32 of the Complaint, except Defendants admit that: (a) Acker and Schultz met in Austin, Texas in mid-May 2017; (b)

at that meeting, Acker delivered Schultz a promissory note (the "Note") confirming that the $325,000 was loaned to Acker personally and would be repaid within ninety days at no interest; and (c) Schultz accepted delivery of the note.  Defendants respectfully refer the Court to the promissory note for the contents thereof.

      33.     Defendants deny each and every allegation in paragraph 33 of the Complaint.

      34.     Defendants deny each and every allegation in paragraph 34 of the Complaint.

      35.     Defendants deny each and every allegation in paragraph 35 of the Complaint.

      36.     Defendants deny each and every allegation in paragraph 36 of the Complaint, except Defendants admit that Schultz has demanded a return of $433,000.

      37.     Defendants deny each and every allegation of paragraph 37 of the Complaint. Defendant admit that Acker and Schultz exchanged texts between June 19, 2017 and June 26, 2017 and respectfully refer the Court to their terms. Defendants note in this connection that Schultz's texts during that seven day period inexplicably inquired about whether a wire would be sent in the following different amounts: $1,108,000; $1,028,000; and $1.5 million.

      38.     Defendants deny each and every allegation of paragraph 38 of the Complaint, except Defendants admit that Acker and Schultz exchanged texts between June 19, 2017 and June 26, 2017 and respectfully refer the Court to their terms.  Defendants admit that Schultz stated in a text dated June 16, 2017 that, if Schultz received a wire of $1,108,000 by June 19, 2017 in connection with the $108,000 advanced by check and wire sixty-eight days before, Schultz would not "need" Acker to return the $325,000 which had also been advanced by Schultz (not, as the Complaint alleges, that "the *immediate* return of the remaining $325,000 . . . would not be necessary").

      39.     Defendants deny each and every allegation of paragraph 39 of the Complaint, except Defendants admit that no wires were sent by Defendants to Plaintiffs in June 2017.

40.     Defendants deny each and every allegation of paragraph 40 of the Complaint, except Defendants admit that Acker asked Schultz to send contact information for Schultz' lawyer to Don Anchors (counsel to Defendants).

41.     Defendants deny each and every allegation of paragraph 41 of the Complaint, except Defendants admit that counsel for Schultz engaged in settlement discussions with Don Anchors.

42.     Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of each and every allegation in paragraph 42 of the Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

43.     Defendants deny each and every allegation of paragraph 43 of the Complaint, except Defendants admit: (a) Judd S. Jackson ("Jackson") is an accountant for Defendants; (b) Jackson spoke with Schultz's counsel in a telephone call for the purpose of settling the parties' disputes; and (c) Jackson later provided draft purchase and sale agreements (Defendants respectfully refer the court to those documents for the contents thereof).

44.     Defendants deny each and every allegation of paragraph 44 of the Complaint, except Defendants admit: (a) settlement negotiations were undertaken by the parties and/or their representatives between June 28, 2017 and July 7, 2017; and (b) Acker and Miracle Strip executed a document entitled "Conditional Settlement Agreement, Mutual Release and Non-Disparagement Agreement" dated July 7, 2017 (the "Conditional  Agreement").  Defendants respectfully refer to the Court to the Conditional Agreement for the contents thereof.  Defendant aver that they do not have a copy of the Conditional Agreement signed by Schultz or Landmark and note that there is no signature block or place for their signatures on the document which was signed by Acker and Miracle Strip.

45.     Defendants deny each and every allegation of paragraph 45 as stated.  Defendants respectfully refer the Court to the Conditional Agreement for the contents thereof.

46.     Defendants deny each and every allegations of paragraph 46 of the Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

47.     Defendants deny each and every allegation of paragraph 47 of the Complaint as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

48.     Defendants deny each and every allegation of paragraph 48 of the Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

49.     Defendants deny each and every allegation of paragraph 49 of the Complaint as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

50.      Defendant deny each and every allegation of paragraph 50 of the Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

51.     Defendants deny each and every allegation of paragraph 50 of the Complaint as stated and respectfully refer the Court to the contents of the Conditional Agreement for the contents thereof.

52.     Defendants deny each and every allegation of paragraph 52 as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

53.     Defendants deny each and every allegation of paragraph 53 of the Complaint, except Defendants admit that $5,000 was paid to Schultz by Acker on July 19, 2017.

54.     Defendants deny each and every allegation of paragraph 54 of the Complaint.

## VI.   CAUSES OF ACTION

### Fraud: Common Law and Fraudulent Misrepresentation

55.     In response to paragraph 55 of the Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 1 through 43 above, as if fully set forth herein.

56.     Defendants deny each and every allegation of paragraph 56 of the Complaint, except Defendants admit that Defendants aver that Acker assured Schultz that the $108,000 would be repaid by Acker, but the parties did not discuss any deadline or other specifics concerning the repayment.

57.     Defendants deny each and every allegation of paragraph 57 of the Complaint.

58.     Defendants deny each and every allegation of paragraph 58 of the Complaint.

59.     Defendants deny each and every allegation of paragraph 59 of the Complaint.

60.     Defendants deny each and every allegation of paragraph 60 of the Complaint.

61.     Defendants deny each and every allegation of paragraph 61 of the Complaint.

62.     Defendants deny each and every allegation of paragraph 62 of the Complaint.

63.     Defendants deny each and every allegation of paragraph 63 of the Complaint.

64.     Defendants deny each and every allegation of paragraph 64 of the Complaint.

<u>Breach of Fiduciary Duty</u>

65.     In response to paragraph 65 of the Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 1 through 43 above, as if fully set forth herein.

66.     Defendants deny each and every allegation of paragraph 66 of the Complaint, except Defendants admit that Schultz advanced the money at issue in this case to Acker for Acker's personal use.

67.     Defendants deny each and every allegation of paragraph 67 of the Complaint.

68.     Defendants deny each and every allegation of paragraph 68 of the Complaint.

69.     Defendants deny each and every allegation of paragraph 69 of the Complaint.

70.     Defendants deny each and every allegation of paragraph 70 of the Complaint.

71.     Defendants deny each and every allegation of paragraph 71 of the Complaint.

<u>Breach of Contract</u>

72.     In response to paragraph 72 of the Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 1 through 43 above, as if fully set forth herein.

73.     Defendants deny each and every allegation of paragraph 73 of the Complaint.

74.     Defendants deny each and every allegation of paragraph 74 of the Complaint.

75.     Defendants deny each and every allegation of paragraph 75 of the Complaint. Defendants note that the reference to paragraph 72 does not make sense insofar as paragraph 72 of the Complaint simply incorporates other paragraphs by reference.

76.     Defendants deny each and every allegation of paragraph 76 of the Complaint.

Breach of Conditional Settlement Agreement, Mutual Release
and Non-Disparagement Agreement

77.     In response to paragraph 77 of the Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 44 through 54 above, as if fully set forth herein.

78.     Defendants deny each and every allegation of paragraph 78 of the Complaint as stated and respectfully refer the Court to the Conditional Agreement for its terms.  Defendants deny each and every allegation of paragraph 79 of the Complaint.

79.     Defendants deny each and every allegation of paragraph 80 of the Complaint.

80.     Defendants deny each and every allegation of paragraph 81 of the Complaint.

## VII. DAMAGES

81.     Defendants deny each and every allegation of paragraph 82 of the Complaint.

82.     Defendants deny each and every allegation of paragraph 83 of the Complaint.

83.     Defendants deny each and every allegation of paragraph 84 of the Complaint.

84.     Defendants deny each and every allegation of paragraph 85 of the Complaint.

## VIII. ATTORNEY'S FEES AND COSTS

85.     In response to paragraph 86 of the Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 72 through 81 above, as if fully set forth herein. In further response, Defendants deny each and every allegation of paragraph 86 of the Complaint.

86.     Defendants deny each and every allegation of paragraph 87 of the Complaint.

## IX.     JURY DEMAND

87.     Defendants demand trial by jury.

## X.  PRAYER

88.     The "WHEREFORE" clause on page 17 of the Complaint recites Plaintiffs' requests for relief and therefore does not require a response.  To the extent a response is required, Defendants deny such allegations.

89.     Out of an abundance of caution, to the extent any allegation of the Complaint is not otherwise addressed in paragraphs 1 through 90 above, such allegation is denied.

## RESERVATIONS OF RIGHTS/ALTERNATIVE PLEADING

90.     To the fullest extent allowed under FRCP 8(d) and other applicable law, Defendants assert all allegations, denials, claims, and affirmative defenses available to them under the law and the facts, even though they may be inconsistent with each other in whole or in part, they may be alternative to each other, and/or they may be based on hypothetical outcomes.

91.     To the extent any allegations or averments in paragraphs 1 through 90 above or in the Counterclaims section set forth below give rise to an affirmative defense which is not designated as such,  Defendants hereby assert that such allegations or averments are intended to also be asserted as an affirmative defense, to the fullest extent permitted by FRCP 8(c)(2).

92.     All conditions precedent to the assertion of all affirmative defenses and Counterclaims have been met and/or waived by the acts and omissions of Plaintiffs or otherwise.

93.     Defendants reserve the right, upon completion of investigation and discovery, to assert such additional defenses, counterclaims, and cross-claims as may be appropriate.

## AFFIRMATIVE DEFENSES

94.     All allegations set forth in other sections of this pleading are incorporated herein by reference.

FIRST AFFIRMATIVE DEFENSE

95.     Plaintiffs' claims are barred or their recovery should be reduced in whole or in part for: (a) failure to state a claim upon which relief can be granted; (b) failure to plead fraud with particularity under FRCP 9(b); and/or (c) failure to meet the pleading requirements of *Twombly* and its progeny.

SECOND AFFIRMATIVE DEFENSE

96.     Each Defendant is a separate and distinct legal person and neither Defendant is responsible for the obligations of the other.  Each Plaintiff is a separate and distinct legal person and each Plaintiff must establish its own righto recover against a particular Defendant.

97.     Plaintiffs' claims are barred or their recovery should be reduced or denied in whole or in part due to a lack of privity between the Plaintiff seeking relief and the Defendant against whom such relief is  being sought and/or each Plaintiffs' lack of standing and/or lack of capacity.

THIRD AFFIRMATIVE DEFENSE

98.     Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on one or more doctrine of estoppel arising out of, among other things: (a) acceptance of the Note; and/or (b) the Conditional Agreement.

FOURTH AFFIRMATIVE DEFENSE

99.     Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on the doctrine of waiver arising out of, among other things, (a) acceptance of the Note; and/or (b) the Conditional Agreement.

FIFTH AFFIRMATIVE DEFENSE

100.    Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on the doctrine of ratification arising out of, among other things: (a) the Note; and/or (b) the Conditional Agreement.

SIXTH AFFIRMATIVE DEFENSE

101.    Plaintiffs' claims should be barred or their recovery reduced in whole or in part by the doctrine of election of remedies.

SEVENTH AFFIRMATIVE DEFENSE

102.    Plaintiffs' claims are barred or their recovery should be reduced in whole or in part by accord and satisfaction arising out of, among other things: (a) the Note; and/or the (b) Conditional Agreement.

EIGHTH AFFIRMATIVE DEFENSE

103.    Some or all of the damages claimed by Plaintiffs are not recoverable under applicable law, including without limitation any special damages which are required to be specially plead under FRCP 9(g).

NINTH AFFIRMATIVE DEFENSE

104.    In the event that there is a finding of damages in favor of Plaintiffs jointly or severally, such damages should be reduced, offset, or recouped against any sums due and owing by Plaintiffs to Defendants jointly or severally.

TENTH AFFIRMATIVE DEFENSE

105.    Any injury, damage or loss allegedly sustained by Plaintiffs was proximately and actually caused by and/or contributed in whole or in part by the acts or omissions of Plaintiffs (including without limitation failing to directly wire money into an attorney escrow account if

the money was to be earmarked for such a deposit) and, accordingly, recovery by Plaintiffs should be barred or reduced in whole or in part to the extent of such causation or responsibility.

## ELEVENTH AFFIRMATIVE DEFENSE

106.   Plaintiffs' claims are barred or recovery should be reduced in whole or in part because Plaintiffs failed and/or refused to mitigate their alleged damages and losses by including, without limitation, sending any money allegedly earmarked for placement in an attorney-trust account to the actual trust account and/or failing to promptly confirm the deposit of same.

## TWELFTH AFFIRMATIVE DEFENSE

107.   Plaintiffs' contract claims under the Conditional Agreement are barred due to lack and/or failure of consideration.

## THIRTEENTH AFFIRMATIVE DEFENSE

108.   Plaintiffs' claims are barred in whole or in part by the doctrine of illegality and/or usury (as alleged more fully in the Counterclaims below).

## FOURTEENTH AFFIRMATIVE DEFENSE

109.   Plaintiffs' claims are barred by release arising out of, among other things: (a) the Note; and/or the (b) Conditional Agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

110.   Plaintiffs' damages claim for lost profits are barred or their recovery should be reduced in whole or in part due to being too uncertain or speculative.

## SIXTEENTH AFFIRMATIVE DEFENSE

111.     Plaintiffs' oral contract claims are barred by the statute of frauds in the following subsections of section 26.01 of the Texas Business and Commerce Code: subsection (b)(2)(a promise by one person to answer for the debt, default, or miscarriage of another person);

and/or (b)(4)(a contract for the sale of real estate); and/or (b)(6) an agreement which is not to be performed within one year from the date of making the agreement;

SEVENTEENTH AFFIRMATIVE DEFENSE

112.    If and to the extent Plaintiffs seek punitive or exemplary damages, such an award would be barred or recovery thereon should be reduced in whole or in part under the due process, equal protection, cruel and unusual punishment, and double jeopardy, clauses of the United States Constitution and its amendments and similar state constitutional protections.

EIGHTEENTH AFFIRMATIVE DEFENSE

113.    Plaintiffs' Conditional Agreement claims are barred due to the doctrine of economic duress.

NINETEENTH AFFIRMATIVE DEFENSE

114.    Plaintiffs' Conditional Agreement claims are barred due to the doctrine of impossibility of performance, to wit: the sale leaseback transactions into which Plaintiffs claim they invested were not consummated through no fault of Defendants.

**COUNTERCLAIMS**

115.    All allegations set forth in other sections of this pleading are incorporated herein by reference.

116.    The Counterclaimants are Acker and Miracle Strip.  The counterclaim defendants are Schultz and Landmark.

117.    The counterclaims are compulsory and the amount on controversy exceeds $75,000, exclusive of costs and attorney's fees.

118.    This Court therefore has subject matter jurisdiction over the counterclaims based on diversity under 28 USC §1332(a) due to the diversity of citizenship of the parties.

119.    Venue is also proper in this court under 28 USC 1391(b) (2) because a substantial

part of the events giving rise to the counterclaims arose in this district.

COUNTERCLAIM COUNT ONE:  USURY

120.    . Defendants contend that the advances at issue in Plaintiffs' claims were personal loans to Acker from Schultz and that the parties agreed that the monies would be repaid by Acker but did not discuss a deadline to do so or any interest rate for the monies. Defendants further contend that Acker provided the Note to Schultz, who accepted it for the $325,000 of monies that were advanced.

121.    Plaintiffs contend that they advanced cash to Defendants for the purpose of making investments which were to be repaid to Schultz by Acker AND that Acker personally guaranteed the returns of and on principal for those "investments."  By requiring Acker to personally guaranty both the return of principal and a return on principal, Plaintiffs were making loans as a matter of Texas law.

122.    As alleged more fully below and will be shown at trial, the economic terms of those loans—as reflected in Plaintiffs' demands for repayment—are usurious and provide Defendants various remedies.

123.    In Texas, contracting for, charging, or receiving interest that is greater than the statutory maximum is contrary to public policy, and creditors that charge usurious interest are subject to penalties. *See* Tex. Fin. Code §§ 302.001(c), 305.001.

124.    In general, a transaction is usurious if it is a loan of money that requires a greater interest than allowed by law.  The essential elements of a usurious transaction are: (a) a loan of money; (b) an absolute obligation to repay the principal; and (c) the exaction of a greater compensation than allowed by law for the use of money by the borrower."  Merely contracting for a usurious interest rate is sufficient for a borrower to assert a claim for usury. Tex. Fin. Code Ann. § 305.001(a-1).  The maximum amount of interest which could be charged on a loan in this

case was eighteen percent per annum.

125.    The label one or more parties place in a transaction is not dispositive for usury analysis under Texas law. "'Loan' means an advance of money that is made to or on behalf of an obligor, the *principal amount* of which the obligor *has an obligation* to pay the creditor." TEX. FIN. CODE ANN. § 301.002(a) (10) (italics added). "'Interest' means compensation for the use, forbearance, or detention of money." *Id*. §301.002(a) (4). "'Usurious interest' means interest that exceeds the applicable maximum amount allowed by law." *Id*. § 301.002(a) (17). When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest, which may not exceed the statutory maximum, regardless of the form of transaction. That is the case with respect to the amounts advanced and demands made by Plaintiffs.

126.    First, Plaintiffs admit in paragraphs 14, 18, 22, 37, and 38 of the Complaint and elsewhere allege: (a) that Acker "personally guaranteed" repayment of the $108,000 advanced by Schultz plus an additional $1,000,000; and (b) the total $1,108,000 was to be repaid by Defendants by June 19, 2017 (or a period of sixty-eight days from the date of the initial advance to the date of demanded repayment).  Plaintiffs' demand for such a repayment  was usurious, insofar as such a payment would represent an annualized interest rate of  4,970 percent, calculated as follows:

        (a) $1,108,000 total amount demanded less $108,000 return of principal equals $1,000,000 of interest;

        (b)  $1 million of interest divided by 68 days equals $14,705.88 per day of interest;

        (c)  $14,705.88 per day of interest times 365 days equals $5,367,646.20 per year of interest;

        (d) $5,367,600 is 4,970 percent per annum interest for $108,000 of principal.

The maximum amount of interest allowable under Texas law for the $108,000 over the 68 day period is $3,621.68 (at eighteen percent; if the court deems these loans to be consumer loans, the maximum rate is ten percent).  Thus, the amount of interest charged by Plaintiffs for the $108,000 at issue in this case is in excess of the legal interest allowed by Texas law.

127.   Second, Plaintiffs allege in paragraphs 73 to 76 of the Complaint that Defendants are personally liable for breach of contract due to their failure to re-pay the $433,000 advanced plus "lost profits and loss of the benefit of the bargain." This claim is based on a refused demand by Plaintiff (see paragraph 75 of the Complaint).   By demanding that Defendants repay the principal advances of $433,000 plus a "minimum" additional amount of $672,500, Plaintiffs charged usurious interest.  The $433,000 of advances were outstanding for a maximum of only 218 days from initial advance to date the Complaint was filed (this date is used for present purposes because Plaintiffs have not identified when they made the pre-suit demand. Referred to in paragraph 75 of the Complaint).  Plaintiffs' demand for repayment was usurious, insofar as such a payment would represent an annualized interest rate of 260 percent, calculated as follows:

(e) $1,015,500 total amount demanded less $433,000 return of principal equals $672,500 of interest;

(f)  $672,500 of interest divided by 218 days equals $3,084.86 per day of interest;

(g) $3,084.86 per day of interest times 365 days equals $1,125,973.90 per year of interest;

(h) $1,125,973 is 260 percent per annum interest for $433,000 of principal.

Plaintiff was limited by Texas law to $50,096.40 of interest for the 218 day period (at eighteen percent; if the court deems these loans to be consumer loans, the maximum rate is ten percent). Thus, the amount of interest charged by Plaintiffs for the $433,000 at issue in this case is in excess of the legal interest allowed by Texas law.

128.    Third, through the Conditional Agreement, Plaintiffs have demanded payment of a total of $866,000 for $433,000 of principal loan advances which were outstanding for a maximum of only eight-six days from the date of the initial advance to the date of the Conditional Agreement. This is a daily interest rate of $5,034.88, which is $1,837,731 per year (or a total annualized interest rate of 100 percent and an effective rate of thus charging interest in excess of 424 percent per annum). Plaintiff was limited by Texas law to $18,363.58 of interest for the 86 day period (at eighteen percent; if the court deems these loans to be consumer loans, the maximum rate is ten percent). Thus, the amount of interest charged by Plaintiffs for the $433,000 at issue in this case is in excess of the legal interest allowed by Texas law.

129.    Under Texas Finance Code section 305.003, a creditor who charges legal interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of: (a) three times the amount computed by subtracting the amount of legal interest allowed by law from the total amount of interest charged or received; or (b) $2,000 or 20 percent of the amount of the principal, whichever is less.   Defendants demand such sums from Plaintiffs with respect to the charges of interest identified above.

130.    Defendants also demand payment of reasonable attorney's fees set by the court under Texas Finance Code section 305.005.

131.    A notice of usury violation and opportunity to cure is being filed concurrently with this Counterclaim under Texas Finance Code section 305.006(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants/Counterclaimants respectfully pray for the following relief:

(a)    Final judgment declaring that Plaintiffs Schultz and Landmark shall take nothing on their claims;

(b)      An award of  damages under the Texas Finance Code, and any other damages or other sums to be proven at trial or in subsequent proceedings, against each counterclaim defendant;

(c)      An order of pre-judgment and post-judgment interest, as supported by the evidence;

(d)       Attorney's fees and costs; and

(e)      One or more orders and a final judgment awarding Lenders such other and further relief as the Court deems just and proper.

Dated:  December 26, 2017

                                Respectfully submitted:

                                The Majorie Firm Ltd.

                                By: _____
                                      Francis R. Majorie
                                      (Pro Hac Vice to be filed)
                                and

                                By: _Thomas J. Annis_____
                                      Thomas J. Annis

                                1450 Cottonwood Valley Court
                                Irving, Texas 75038
                                Tel:  (214) 306-8107
                                Fax: (214) 522-07911


<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT, on this 26th day of December 2017, a true and correct copy of the foregoing was served counsel of record to Plaintiffs pursuant to the ECF system.


                                /s/ Thomas J Annis_____