IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK F. SCHULTZ and | § | |
| LANDMARK CONSOLIDATED, INC. | § | CIVIL ACTION NO. A-17-cv-1088 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | JURY TRIAL DEMANDED |
| | § | |
| JOHN ACKER, and, | § | |
| MIRACLE STRIP HOLDINGS, X, LLC | § | |
| | § | |
| Defendants. | § | |

**FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT AND
COUNTERCLAIMS BY DEFENDANTS JOHN ACKER
AND MIRACLE STRIP HOLDINGS X, LLC**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to the Court's Order entered on March 7, 2018 [Doc. 24], defendants John Acker ("Acker") and Miracle Strip Holdings X, LLC ("Miracle Strip") (jointly and severally, "Defendants") file their First Amended Answer to the First Amended Complaint filed on January 30, 2018 [Doc. 18] (the "Amended Complaint") by plaintiffs Mark F. Schultz ("Schultz") and Landmark Consolidated, Inc. ("Landmark") as follows:

**RESPONSES TO ALLEGATIONS IN THE AMENDED COMPLAINT**

**I.      THE  PARTIES**

1.      Defendants admit the allegations in paragraph 1 of the Amended Complaint.

2.      Defendants admit the allegations in paragraph 2 of the Amended Complaint.

3.      Defendants admit the allegations asserted in paragraph 3 of the Amended Complaint.

4.      Defendants admit the allegations asserted in paragraph 4 of the Amended Complaint.

II.      JURISDICTION

5.      Defendants admit the allegations in paragraph 5 of the Amended Complaint.

III.   VENUE

6.      Defendants admit the allegations in paragraph 6 of the Amended Complaint.

IV. CONDITIONS PRECEDENT

7.      Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of each and every allegation in paragraph 7 of the Amended Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

V.      FACTS

8.      Defendants deny each and every allegation of paragraph 8 of the Amended Complaint, except that Defendants admit that Schultz had a communications with Desi Arellano ("Arellano") in February 2017 and aver that Arellano contacted Schultz to introduce the concept that Schultz engage in developments in which Arellano would do the concrete work and Acker and Miracle Holdings would find investors for the developments.

9.      Defendants knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 9 of the Amended Complaint and those allegations are therefore deemed denied under FRCP 8(b) (5), except that Defendants admit: (a) Arellano owns a concrete finishing company which did work for Schultz at some point in time; and (b) Acker is Arellano's step son-in-law.

10.     Defendants deny each and every allegation in paragraph 10 of the Amended Complaint, as stated. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.  Defendants admit: (a) Arellano, Acker, and Schultz had a phone call in the first quarter of 2017; (b) during that phone call, Acker truthfully informed Schultz that

Acker had worked closely with Wayne Rogers over a long period of time; and (c) during that phone call, Acker truthfully informed Schultz that Acker was doing business with Gabriel Silverstein. Defendants further aver that Plaintiff's allegations in paragraphs 8 and 9 of the Amended Complaint that Schultz was contacted by Arellano and spoke to him in in February 2017 and that the conversation alleged in paragraph 10 of the Amended Complaint took place on February 22, 2017 is contradicted by an email from Schultz to Wanda Harkness (and forwarded to Acker on June 26, 2017), in which Schultz states: "I was introduced to John Acker by Desi Arellano the last week of March of this year."

11.     Defendants presently lack knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph 11 of the Amended Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

12.     Defendants deny each and every allegation of paragraph 12 of the Amended Complaint, except that Defendants admit: (a) on March 28, 2017  Jeff Lehman on behalf of Miracle Strip sent a text to set up a telephone call between Jeff Lehman and John Acker on behalf of Miracle Strip, Desi Arellano, Schultz on behalf of Landmark (Mr. Schultz' operating company), and Greg Aclin on behalf of Medistar Corporation; and (b) a conference call was held by the foregoing in which  Schultz and Landmark were introduced to Aclin and Medistar (and *vice versa*) and the participants discussed  possible real estate  investment opportunities between Medistar and Landmark.  Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.

13.     Defendants deny each and every allegation of paragraph 13 of the Amended Complaint, as stated.  Defendants admit that a written Confidentiality and Non-Circumvention Agreement was executed by Miracle Strip and Landmark effective as of March 30, 2017 and

respectfully refer the Court to the contents thereof.

14.     Defendants deny each and every allegation of paragraph 14 of the Amended Complaint, as stated. Defendants admit that Acker and Schultz had a phone conversation on April 11, 2017.

15.     Defendants deny each and every allegation of paragraph 15 of the Amended Complaint, except that Defendants admit that Acker met with Schultz in person for the first time on April 12, 2017 at the restaurant of the Four Seasons Hotel in Austin, Texas.

16.     Defendants deny each and every allegation of paragraph 16 of the Amended Complaint, except Defendants admit that (a) Schultz provided Acker a $70,000 check drawn on Schultz' personal bank account and payable to Acker personally; and (b) Acker and Schultz agreed that Acker would pay such sum back personally, but neither Acker nor Schultz agreed to a specific deadline for Acker to do so nor the specific amount of interest which would be paid.

17.     Defendants deny each and every allegation in paragraph 17 of the Amended Complaint, except Defendants admit that on April 14, 2017 Schultz wired $38,000 from Schultz's personal bank account to Acker's personal bank account.

18.     Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Amended Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5). Defendants aver that Acker assured Schultz that the $108,000 would be repaid by Acker, but the parties did not discuss any deadline or other specifics concerning the repayment.

19.     Defendants deny each and every allegation of paragraph 19 of the Amended Complaint. Defendants admit that, among many other topics in many phone calls, Acker and Schultz discussed the nature of Acker's business, which is to locate end users of real estate who wish to do sale-leasebacks, locate potential investors in those transactions, lock in the transaction

for a specific purchase and re-sale price, and earn the profit from the spread at a simultaneous closing. The potential buyer, not Acker, fronts the money for the deposits required for the purchase contract. Defendants admit that, in at least one phone call with Schultz, Acker discussed his pursuit of a possible sale-leaseback opportunity involving Residence at Bluewater in Niceville, Florida, but Acker did not ask for money from Schultz for a direct investment in that transaction.  All monies at issue in this suit were requested by Acker from Schultz as personal loans to Acker, to be used for personal expenses. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of phone calls between the parties.

20.    Defendants deny each and every allegation of paragraph 20 of the Amended Complaint.

21.    Defendants deny each and every allegation of paragraph 21 of the Amended Complaint, except Defendants admit that on April 19, 2017 Schultz wired $75,000 from Schultz's personal bank account to Acker's personal bank account for a personal loan.

22.    Defendants deny each and every allegation of paragraph 22 of the Amended Complaint, except Defendants admit that Schultz advanced the money to Acker for Acker's personal use (a fact acknowledged in the Amended Complaint by its use of the phrase "entrusted in him, for his own personal use") and that the money was not placed into a trust account (because it was not required to be and earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

23.    Defendants deny each and every allegation of paragraph 23 of the Amended Complaint, except that Defendants admit that Acker met with Schultz in person on April 25, 2017 at the restaurant of the Four Seasons Hotel in Austin, Texas and that among the topics of conversation were potential sale-leaseback opportunities involving two Hicks Ventures

rehabilitation facilities in El Paso, Texas and Fargo, North Dakota. Defendants deny that Acker asked Schultz for money to be used as an earnest money deposit for that potential opportunity. Defendants admit that Acker asked Schultz for a personal loan to be used for Acker's personal expenses.

24. Defendants deny each and every allegation of paragraph 24 of the Amended Complaint.

25. Defendants deny each and every allegation of paragraph 25 of the Amended Complaint, except Defendants admit that on April 26, 2017 Schultz wired $100,000 from Schultz's personal bank account to Acker's personal bank account and aver that the money was wired to Acker for Acker's personal use.

26. Defendants deny each and every allegation of paragraph 26 of the Amended Complaint. Defendants aver that Schultz advanced the money to Acker for Acker's personal use (a fact acknowledged in the Amended Complaint by its use of the phrase "or his own $100,000") and admit that the money was not placed into a trust account (because it was not required to be and because earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

27. Defendants deny each and every allegation of paragraph 27 of the Amended Complaint as stated. Defendants admit that, among many other topics in many phone calls, Acker and Schultz discussed in at least one phone call a prospect Acker had been working on for many months involving a possible sale-leaseback transaction for four memory care facilities in Niceville, Lecanto, Cala Hills, and Brandon Florida owned by Superior Residences, Inc. Defendants did not ask Schultz to advance any money directly for an earnest money deposit for that possible transaction. Defendants state that they are in the process of obtaining their phone records and will be asking Plaintiffs to produce their phone records to ascertain the dates of

phone calls between the parties.

28.     Defendants deny each and every allegation of paragraph 28 of the Amended Complaint.

29.     Defendants deny each and every allegation of paragraph 29 of the Amended Complaint, except Defendants admit that on May 1, 2017 Schultz wired $150,000 from Schultz's personal bank account to Acker's personal bank account and aver that the money was wired to Acker for Acker's personal use (a fact acknowledged in the Amended Complaint through its use of the phrase "or his $150,000"). Defendants admit that the money was not deposited as earnest money (because it was not required to be and because earnest money for such a transaction would come from the ultimate buyer in the sale leaseback, not Acker).

30.     Defendants deny each and every allegation of paragraph 30 of the Amended Complaint, as stated. Defendants admit that a written letter of intent (the "Proposed LOI") was executed on May 1, 2017 by HV Development, LLC denominating "Buyer" to be "Miracle Strip Holdings X, LLC (including John Acker, Marl Schultz, Landmark Consolidated and Zenith America Corporation), their assigns and/or Affiliates (defined below)." Defendants respectfully refer the Court to the Proposed LOI for the contents thereof, including without limitation the statement in paragraph 14 thereof that the Proposed LOI is "not a binding commitment or agreement between the parties to purchase or sell the properties" and "does not obligate the parties to proceed to an agreement."

31.     Defendants deny each and every allegation in paragraph 31 of the Amended Complaint, as stated. Defendants admit that Schultz sent an email on May 2, 2017 at 1:06am (CST) to Jeff Lehman with a copy to Acker. Defendants respectfully refer the Court to the email itself for the contents thereof, including without limitation ) the false statement that Schultz had made wire transfers of $325,000 "to your company" (when all wires sent by Schultz had been

made to Acker's personal account); and (b)  the request for identification of "the three contracts for which this earnest money was deposited, . . . dates the earnest money was  deposited, [and] dates when the earnest money goes hard" (which directly contradicts the allegations in the Amended Complaint that Schultz sent the wires based on an understanding that "in no event would the earnest money become nonrefundable or be at risk of being forfeited without Mr. Schultz's approval.")  Defendants aver that Schultz wrote this late night/early morning email to begin to "paper" a narrative that the wires were sent as earnest money deposits for investments by Landmark and not for what they were actually sent (as personal loans by Schultz to Acker).

32.     Defendants deny each and every allegation of paragraph 32 of the Amended Complaint, except Defendants admit that: (a) Acker and Schultz met in Austin, Texas in mid-May 2017; (b) at that meeting, Acker delivered Schultz a promissory note (the "Note") confirming that the $325,000 was loaned to Acker personally and would be repaid within ninety days at no interest; and (c) Schultz accepted delivery of the note. Defendants respectfully refer the Court to the promissory note for the contents thereof.

33.     Defendants deny each and every allegation in paragraph 33 of the Amended Complaint.

34.     Defendants deny each and every allegation in paragraph 34 of the Amended Complaint.

35.     Defendants deny each and every allegation in paragraph 35 of the Amended Complaint.

36.     Defendants deny each and every allegation in paragraph 36 of the Amended Complaint, except Defendants admit that Schultz has demanded a return of $433,000.

37.     Defendants deny each and every allegation of paragraph 37 of the Amended Complaint.  Defendants admit that Acker and Schultz exchanged texts between June 19, 2017

and June 26, 2017 and respectfully refer the Court to their terms. Defendants note in this connection that Schultz's texts during that seven day period inexplicably inquired about whether a wire would be sent in the following different amounts: $1,108,000; $1,028,000; and $1.5 million.

38.      Defendants deny each and every allegation of paragraph 38 of the Amended Complaint, except Defendants admit that Acker and Schultz exchanged texts between June 19, 2017 and June 26, 2017 and respectfully refer the Court to their terms. Defendants admit that Schultz stated in a text dated June 16, 2017 that, if Schultz received a wire of $1,108,000 by June 19, 2017 in connection with the $108,000 advanced by check and wire sixty-eight days before, Schultz would not "need" Acker to return the $325,000 which had also been advanced by Schultz (not, as the Amended Complaint alleges, that "the *immediate* return of the remaining $325,000 . . . would not be necessary").

39.      Defendants deny each and every allegation of paragraph 39 of the Amended Complaint, except Defendants admit that no wires were sent by Defendants to Plaintiffs in June 2017.

40.      Defendants deny each and every allegation of paragraph 40 of the Amended Complaint, except Defendants admit that Acker asked Schultz to send contact information for Schultz' lawyer to Don Anchors (counsel to Defendants).

41.      Defendants deny each and every allegation of paragraph 41 of the Amended Complaint, except Defendants admit that counsel for Schultz engaged in settlement discussions with Don Anchors.

42.      Defendants presently lack sufficient knowledge or information sufficient to form a belief as to the truth of each and every allegation in paragraph 42 of the Amended Complaint and those allegations are therefore deemed denied under FRCP 8(b)(5).

43.     Defendants deny each and every allegation of paragraph 43 of the Amended Complaint, except Defendants admit: (a) Judd S. Jackson ("Jackson") is an accountant for Defendants; (b) Jackson spoke with Schultz's counsel in a telephone call for the purpose of settling the parties' disputes; and (c) Jackson later provided draft purchase and sale agreements (Defendants respectfully refer the court to those documents for the contents thereof).

44.     Defendants deny each and every allegation of paragraph 44 of the Amended Complaint, except Defendants admit: (a) settlement negotiations were undertaken by the parties and/or their representatives between June 28, 2017 and July 7, 2017; and (b) Acker and Miracle Strip executed a document entitled "Conditional Settlement Agreement, Mutual Release and Non-Disparagement Agreement" dated July 7, 2017 (the "Conditional Agreement"). Defendants respectfully refer to the Court to the Conditional Agreement for the contents thereof. Defendant aver that they do not have a copy of the Conditional Agreement signed by Schultz or Landmark and note that there is no signature block or place for their signatures on the document which was signed by Acker and Miracle Strip.

45.     Defendants deny each and every allegation of paragraph 45 as stated. Defendants respectfully refer the Court to the Conditional Agreement for the contents thereof.

46.     Defendants deny each and every allegations of paragraph 46 of the Amended Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

47.     Defendants deny each and every allegation of paragraph 47 of the Amended Complaint as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

48.     Defendants deny each and every allegation of paragraph 48 of the Amended Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

49.     Defendants deny each and every allegation of paragraph 49 of the Amended Complaint as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

50.      Defendant deny each and every allegation of paragraph 50 of the Amended Complaint. Defendants aver that Plaintiffs do not identify what acts or omissions they allege to comprise "Plaintiffs' compliance with the Conditional Agreement" and that instrument does not appear to impose any obligations or other consideration to be provided by Plaintiffs except a conditional release.

51.     Defendants deny each and every allegation of paragraph 50 of the Amended Complaint as stated and respectfully refer the Court to the contents of the Conditional Agreement for the contents thereof.

52.     Defendants deny each and every allegation of paragraph 52 as stated and respectfully refer the Court to the Conditional Agreement for the contents thereof.

53.     Defendants deny each and every allegation of paragraph 53 of the Amended Complaint, except Defendants admit that $5,000 was paid to Schultz by Acker on July 19, 2017.

54.     Defendants deny each and every allegation of paragraph 54 of the Amended Complaint.

//

//

## VI.    CAUSES OF ACTION

### Fraud: Common Law and Fraudulent Misrepresentation

55.    In response to paragraph 55 of the Amended Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 8 through 43 above, as if fully set forth herein.

56.    Defendants deny each and every allegation of paragraph 56 of the Amended Complaint, except Defendants admit that Defendants aver that Acker assured Schultz that the $108,000 would be repaid by Acker, but the parties did not discuss any deadline or other specifics concerning the repayment.

57.    Defendants deny each and every allegation of paragraph 57 of the Amended Complaint.

58.    Defendants deny each and every allegation of paragraph 58 of the Amended Complaint.

59.    Defendants deny each and every allegation of paragraph 59 of the Amended Complaint.

60.    Defendants deny each and every allegation of paragraph 60 of the Amended Complaint.

61.    Defendants deny each and every allegation of paragraph 61 of the Amended Complaint.

62.    Defendants deny each and every allegation of paragraph 62 of the Amended Complaint.

63.    Defendants deny each and every allegation of paragraph 63 of the Amended Complaint.

64.     Defendants deny each and every allegation of paragraph 64 of the Amended Complaint.

## Breach of Fiduciary Duty

65.     In response to paragraph 65 of the Amended Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 8 through 43 above, as if fully set forth herein.

66.     Defendants deny each and every allegation of paragraph 66 of the Amended Complaint, except Defendants admit that Schultz advanced the money at issue in this case to Acker for Acker's personal use.

67.     Defendants deny each and every allegation of paragraph 67 of the Amended Complaint.

68.     Defendants deny each and every allegation of paragraph 68 of the Amended Complaint.

69.     Defendants deny each and every allegation of paragraph 69 of the Amended Complaint.

70.     Defendants deny each and every allegation of paragraph 70 of the Amended Complaint.

71.     Defendants deny each and every allegation of paragraph 71 of the Amended Complaint.

## Breach of Contract

72.     In response to paragraph 72 of the Amended Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 8 through 43 above, as if fully set forth herein.

73.     Defendants deny each and every allegation of paragraph 73 of the Amended Complaint.

74.     Defendants deny each and every allegation of paragraph 74 of the Amended Complaint.

75.     Defendants deny each and every allegation of paragraph 75 of the Amended Complaint.  Defendants note that the reference to paragraph 72 does not make sense insofar as paragraph 72 of the Amended Complaint simply incorporates other paragraphs by reference.

76.     Defendants deny each and every allegation of paragraph 76 of the Amended Complaint.

<u>Breach of Conditional Settlement Agreement, Mutual Release<br>and Non-Disparagement Agreement</u>

77.     In response to paragraph 77 of the Amended Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 44 through 54 above, as if fully set forth herein.

78.     Defendants deny each and every allegation of paragraph 78 of the Amended Complaint as stated and respectfully refer the Court to the Conditional Agreement for its terms. Defendants aver that they do not have a copy of the Conditional Agreement signed by Schultz or Landmark and note that there is no signature block or place for their signatures on the document which was signed by Acker and Miracle Strip.

79.      Defendants deny each and every allegation of paragraph 79 of the Amended Complaint.

80.     Defendants deny each and every allegation of paragraph 80 of the Amended Complaint.

81.     Defendants deny each and every allegation of paragraph 81 of the Amended Complaint.

## VII. DAMAGES

82.     Defendants deny each and every allegation of paragraph 82 of the Amended Complaint.

83.     Defendants deny each and every allegation of paragraph 83 of the Amended Complaint.

84.     Defendants deny each and every allegation of paragraph 84 of the Amended Complaint.

85.     Defendants deny each and every allegation of paragraph 85 of the Amended Complaint.

## VIII. ATTORNEY'S FEES AND COSTS

86.     In response to paragraph 86 of the Amended Complaint, Defendants incorporate by reference the admissions, denials, and other statements in paragraphs 72 through 81 above, as if fully set forth herein. In further response, Defendants deny each and every allegation of paragraph 86 of the Amended Complaint.

87.     Defendants deny each and every allegation of paragraph 87 of the Amended Complaint.

## IX.     JURY DEMAND

88.     Defendants demand trial by jury.

## X.  PRAYER

89.     The "WHEREFORE" clause on page 18 of the Amended Complaint recites Plaintiffs' requests for relief and therefore does not require a response. To the extent a response is required, Defendants deny such allegations.

90.     Out of an abundance of caution, to the extent any allegation of the Amended Complaint is not otherwise addressed in paragraphs 1 through 89 above, such allegation is denied.

## RESERVATIONS OF RIGHTS/ALTERNATIVE PLEADING

91.     To the fullest extent allowed under FRCP 8(d) and other applicable law, Defendants assert all allegations, denials, claims, and affirmative defenses available to them under the law and the facts, even though they may be inconsistent with each other in whole or in part, they may be alternative to each other, and/or they may be based on hypothetical outcomes.

92.     To the extent any allegations or averments in paragraphs 1 through 90 above or in the Counterclaims section set forth below give rise to an affirmative defense which is not designated as such,  Defendants hereby assert that such allegations or averments are intended to also be asserted as an affirmative defense, to the fullest extent permitted by FRCP 8(c)(2).

93.     All conditions precedent to the assertion of all affirmative defenses and Counterclaims have been met and/or waived by the acts and omissions of Plaintiffs or otherwise.

94.     Defendants reserve the right, upon completion of investigation and discovery, to assert such additional defenses, counterclaims, and cross-claims as may be appropriate.

## AFFIRMATIVE DEFENSES

95.     All allegations set forth in other sections of this pleading are incorporated herein by reference.

### FIRST AFFIRMATIVE DEFENSE

96.     Plaintiffs' claims are barred or their recovery should be reduced in whole or in part for: (a) failure to state a claim upon which relief can be granted; (b) failure to plead fraud with particularity under FRCP 9(b); and/or (c) failure to meet the pleading requirements of *Twombly* and its progeny.

## SECOND AFFIRMATIVE DEFENSE

97.        Each Defendant is a separate and distinct legal person and neither Defendant is responsible for the obligations of the other.  Each Plaintiff is a separate and distinct legal person and each Plaintiff must establish its own right to recover against a particular Defendant.

98.      Plaintiffs' claims are barred or their recovery should be reduced or denied in whole or in part due to a lack of privity between the Plaintiff seeking relief and the Defendant against whom such relief is  being sought and/or each Plaintiffs' lack of standing and/or lack of capacity.

## THIRD AFFIRMATIVE DEFENSE

99.        Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on one or more doctrine of estoppel arising out of, among other things: (a) acceptance of the Note; and/or (b) the Conditional Agreement.

## FOURTH AFFIRMATIVE DEFENSE

100.      Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on the doctrine of waiver arising out of, among other things, (a) acceptance of the Note; and/or (b) the Conditional Agreement.

## FIFTH AFFIRMATIVE DEFENSE

101.      Plaintiffs' claims are barred or their recovery should be reduced in whole or in part based on the doctrine of ratification arising out of, among other things: (a) the Note; and/or (b) the Conditional Agreement.

## SIXTH AFFIRMATIVE DEFENSE

102.      Plaintiffs' claims should be barred or their recovery reduced in whole or in part by the doctrine of election of remedies.

### SEVENTH AFFIRMATIVE DEFENSE

103.    Plaintiffs' claims are barred or their recovery should be reduced in whole or in part by accord and satisfaction arising out of, among other things: (a) the Note; and/or the (b) Conditional Agreement.

### EIGHTH AFFIRMATIVE DEFENSE

104.    Some or all of the damages claimed by Plaintiffs are not recoverable under applicable law, including without limitation any special damages which are required to be specially plead under FRCP 9(g).

### NINTH AFFIRMATIVE DEFENSE

105.    In the event that there is a finding of damages in favor of Plaintiffs jointly or severally, such damages should be reduced, offset, or recouped against any sums due and owing by Plaintiffs to Defendants jointly or severally.

### TENTH AFFIRMATIVE DEFENSE

106.    Any injury, damage or loss allegedly sustained by Plaintiffs was proximately and actually caused by and/or contributed in whole or in part by the acts or omissions of Plaintiffs (including without limitation failing to directly wire money into an attorney escrow account if the money was to be earmarked for such a deposit) and, accordingly, recovery by Plaintiffs should be barred or reduced in whole or in part to the extent of such causation or responsibility.

### ELEVENTH AFFIRMATIVE DEFENSE

107.    Plaintiffs' claims are barred or recovery should be reduced in whole or in part because Plaintiffs failed and/or refused to mitigate their alleged damages and losses by including, without limitation, sending any money allegedly earmarked for placement in an attorney-trust account to the actual trust account and/or failing to promptly confirm the deposit of same.

## TWELFTH AFFIRMATIVE DEFENSE

108.    Plaintiffs' contract claims under the Conditional Agreement are barred due to lack and/or failure of consideration.

## THIRTEENTH AFFIRMATIVE DEFENSE

109.    Plaintiffs' claims are barred in whole or in part by the doctrine of illegality and/or usury (as alleged more fully in the Counterclaims below).

## FOURTEENTH AFFIRMATIVE DEFENSE

110.    Plaintiffs' claims are barred by release arising out of, among other things: (a) the Note; and/or the (b) Conditional Agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

111.    Plaintiffs' damages claim for lost profits are barred or their recovery should be reduced in whole or in part due to being too uncertain or speculative.

## SIXTEENTH AFFIRMATIVE DEFENSE

112.    Plaintiffs' oral contract claims are barred by the statute of frauds in the following subsections of section 26.01 of the Texas Business and Commerce Code: subsection (b)(2)(a promise by one person to answer for the debt, default, or miscarriage of another person); and/or (b)(4)(a contract for the sale of real estate); and/or (b)(6) an agreement which is not to be performed within one year from the date of making the agreement;

## SEVENTEENTH AFFIRMATIVE DEFENSE

113.    If and to the extent Plaintiffs seek punitive or exemplary damages, such an award would be barred or recovery thereon should be reduced in whole or in part under the due process, equal protection, cruel and unusual punishment, and double jeopardy, clauses of the United States Constitution and its amendments and similar state constitutional protections.

## EIGHTEENTH AFFIRMATIVE DEFENSE

114.    Plaintiffs' Conditional Agreement claims are barred due to the doctrine of economic duress.

## NINETEENTH AFFIRMATIVE DEFENSE

115.    Plaintiffs' Conditional Agreement claims are barred due to the doctrine of impossibility of performance, to wit: the sale leaseback transactions into which Plaintiffs claim they invested were not consummated through no fault of Defendants.

## COUNTERCLAIM COUNT ONE: USURY

**A.      The Parties, Venue, and Jurisdiction**

116.    The Counterclaimants are Acker and Miracle Strip.

117.    The counterclaim defendants are Schultz and Landmark.

118.    The counterclaims are compulsory and the amount in controversy exceeds $75,000, exclusive of costs and attorney's fees.

119.    This Court therefore has subject matter jurisdiction over the counterclaims based on diversity under 28 USC §1332(a) due to the diversity of citizenship of the parties.

120.    Venue is also proper in this court under 28 USC §1391(b) (2) because a substantial part of the events giving rise to the counterclaims arose in this district.

**B.     The Law**

121.    In Texas, the essential elements of a usurious transaction are: (a) a loan of money; (b) an absolute obligation to repay the principal; and (c) the exaction of a greater compensation than allowed by law for the use of money by the borrower. Merely contracting for a usurious interest rate is sufficient for a borrower to assert a claim for usury. TEX. FIN. CODE ANN. § 305.001(a-1).

//

122.    Contracting for, charging, or receiving interest that is greater than the statutory maximum is contrary to public policy, and creditors that charge usurious interest are subject to penalties. *See* Tex. Fin. Code §§ 302.001(c), 305.001.

123.    The label one or more parties place on a transaction is not dispositive for usury analysis under Texas law. "'Loan' means an advance of money that is made to or on behalf of an obligor, the principal amount of which the obligor has an obligation to pay the creditor." TEX. FIN. CODE ANN. § 301.002(a) (10) (italics added). "'Interest' means compensation for the use, forbearance, or detention of money." Id. §301.002(a) (4). "'Usurious interest' means interest that exceeds the applicable maximum amount allowed by law." *Id.* § 301.002(a) (17).

124.    When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest, which may not exceed the statutory maximum, regardless of the form of transaction. *See, e.g., Johns v. Jaeb*, 518 S.W.2d 857, 859 (Tex. Civ. App.—Dallas 1974, no writ) (finding, as matter of law, that transaction was loan rather than contribution to limited partnership because there was an absolute obligation to repay the funds).

**C.    Usury Violations By Schultz And/Or Landmark**

125.    A notice of usury violation and opportunity to cure was filed and served via ECF concurrently with Defendants' original counterclaim on December 26, 2017 under Texas Finance Code section 305.006(d).

126.    The maximum amount of interest which could be charged on a loan in this case was between six percent and twenty-eight percent per annum (depending on whether the loan is found to be personal, commercial, or business). For ease of pleading and to avoid confusion, this Counterclaim employs twenty-eight percent as the maximum amount of interest which could be charged. However, Acker and Miracle Strip reserve the right to assert that a lower rate of interest

is the proper rate of interest to employ as the "maximum rate" (because, by way of example but not limitation, the loans were personal and not commercial).

### 1.  The $1,108, 000 Demand For the $108,000 Of Advances

127.    Schultz and Landmark allege that they made a series of advances totaling $108,000 to "Acker individually and acting through Miracle Strip" and that the $108,000 was "guaranteed" to be repaid with additional sums, totaling $690,500. *See, e.g.*, Amended Complaint ¶¶ 15 and 56.

128.    In email and text correspondence in June 2017, Schultz demanded payment by Acker of $1,108,000 by June 19, 2017, which represented repayment of the $108,000 advanced plus an additional $1 million. This demand is essentially admitted in paragraphs 15, 18, 37, and 38 of the Amended Complaint. June 19, 2017 was sixty-eight days from the date of the very first advance leading to the total $108,000 which is the subject of paragraphs 15 and 56 of the Amended Complaint.

129.    Acker and Miracle Strip acknowledge that Schultz advanced $108,000 to Acker, but contend that the $108,000 was advanced as a personal loan to Acker from Schultz, that the parties agreed that the $108,000 would be repaid by Acker (not Miracle Strip), that the parties did not discuss a deadline for repayment or any interest rate for the money, and that there was no "guaranty" of a total repayment of either $690,500 or $1 million.

130.    However, if Schultz and/or Landmark succeed in establishing their factual allegations that the advances totaling $108,000 were "guaranteed" to be repaid together with $1 million of additional funds, the $108,000 transaction was a "loan" and not an "investment" as a matter of Texas law. By requiring "Acker  individually and acting through Miracle Strip" to guaranty both the return *of* principal and a return *on* principal, Schultz and/or Landmark were making loans—not "investments"—as a matter of Texas law.

131.    Moreover, the demand by Schultz and/or Landmark that Acker and/or Miracle Strip repay the $108,000 plus $1 million of additional funds was usurious. The June 2017 demand for payment of $1,108,000 for an advance of $108,000 over a sixty-eight day period represented an annualized interest rate of 4,970 percent, calculated as follows: (a) $1,108,000 total amount demanded less $108,000 return of principal equals $1,000,000 of interest; (b) $1 million of interest divided by 68 days equals $14,705.88 per day of interest; (c) $14,705.88 per day of interest times 365 days equals $5,367,646.20 per year of interest; and (d) $5,367,600 is 4,970 percent per annum interest for $108,000 of principal.

132.    The maximum amount of interest allowable under Texas law for the $108,000 over the 68 day period is therefore $5,576 (if at 28% per annum). That means that Schultz and Acker have demanded over 49 times more interest than the highest interest rate allowed by law. A lower maximum rate of lawful interest rate than 28% would result in a lower lawful amount of interest to be charged and a corresponding higher charge for applying usury.

133.    Thus, under any categorization of the loans at issue in this case as personal, business, or commercial, the amount of interest charged by Plaintiffs for the $108,000 at issue in this case is in excess of the legal interest allowed by Texas law.

**2.  The Two Demands Regarding The $433,000 Of Advances**

134.    In addition to the $108,000 of advances, Schultz and Landmark allege that they advanced a total of $325,000, for which they have alternatively demanded repayment of either $866,000 or $1,015,500. Acker and Landmark acknowledge total advances of $433,000, but contend that the monies were advanced as a personal loan to Acker from Schultz, that the parties agreed that the $433,000 would be repaid by Acker (not Miracle Strip), that the parties did not discuss a deadline for repayment or any interest rate for the money, and that there was no "guaranty" of a total repayment of either $866,000 or $1,015,000.

135.   However, if Schultz and/or Landmark succeed in establishing their factual allegations that there was a "guaranty" of a repayment of and on the $433,000, they are liable to Acker and/or Miracle Strip under Texas usury law.

### (a)   The $866,000 Demand

136.   Acker and Miracle Strip do not have a copy of the Conditional Agreement signed by Schultz and Landmark. However, Schultz and Landmark have asserted in paragraphs 77 through 81 of the Amended Complaint that the parties entered into the Conditional Agreement dated July 8, 2017 and that  Schultz and/or  Landmark "were to receive compensation" under that agreement for their $433,000 of advances in the amount of $866,000. This is a reiteration of their factual contention that they were "guaranteed" both a return *of* their $433,000 and a return *on* their $433,000 (which, if true, would mean that they made loans—not investments—as a matter of law).

137.   Schultz and Acker's demand for payment of $866,000 equates to a demand of interest of $433,000 for the $433,000 of principal advances.

138.   The $433,000 of principal loan advances were outstanding for eighty-six days from the date of the initial advance to the date Schultz and Landmark demanded the $866,000 through the Conditional Agreement.

139.   The maximum amount of annual interest allowable under Texas law (if at 28% per annum) for the $433,000 is $121,240 or $332.16 per day, which equates to $28,565.76 over the eighty-six day period.

140.   The Conditional Agreement charged interest of $433,000 over the same eighty-six day period (or $6,367.64 per day). This equates to an annual interest rate which is over nineteen times higher than the highest lawful rate. A lower lawful interest rate would result in a lower lawful amount of interest to be charged and a corresponding higher charge for applying

usury.

141.    Thus, the amount of interest charged by Schultz and Landmark under the Conditional Agreement for the $433,000 at issue in this case is in excess of the legal interest allowed by Texas law.

### (b)   The $1,015,500 Demand

142.    Schultz and Landmark allege in paragraphs 73 to 76 of the Amended Complaint that Acker and Miracle Strip are liable for breach of contract due to the alleged failure to re-pay the $433,000 plus "lost profits and *loss of the benefit of the bargain in the minimum amount of $1,015,500*." (Italics added)  This is a reiteration of their contention that they were "guaranteed" receive both a return *of* their $433,000 and a return *on* their $433,000 (which, if true, would mean that they made loans—not investments—as a matter of law).

143.    Schultz and Acker's demand for payment of $1,015,500 for their $433,000 equates to a demand of interest of $582,500 for the $433,000.

144.    The $433,000 of principal loan advances were outstanding for 218 days from the initial advance to the demand of repayment by Schultz and Landmark.

145.    The maximum amount of annual interest allowable under Texas law for the $433,000 is $121,240 or $332.16 per day (28% per annum), which equates to $72,410.88 over the 218 day period.

146.    Schultz and Acker's demand for payment of $582,500 charges $2,672.01 per day for the 218 day period. This equates to an annual interest rate which is over eight times higher than the highest lawful rate. A lower lawful interest rate would result in a lower lawful amount of interest to be charged and a corresponding higher charge for applying usury.

147.    Thus, the amount of interest charged by Schultz and/or Landmark is in excess of the legal interest allowed by Texas law.

**D.  Remedies**

148.    Under Texas Finance Code section 305.003, a creditor who charges legal interest that is greater than the amount authorized by this subtitle is liable to the obligor for an amount that is equal to the greater of: (a) three times the amount computed by subtracting the amount of legal interest allowed by law from the total amount of interest charged or received; or (b) $2,000 or 20 percent of the amount of the principal, whichever is less.

149.    Acker and Landmark demand all such sums to which they prove entitled under the facts established at trial or by motion and under the law.

150.    Acker and Landmark presently estimate that they are entitled to the following awards against Schultz and Landmark jointly and severally under section 305.003 of the Texas Finance Code:

(a)     For their usurious charges in connection with their demand of $1,108,000 for the $108,000 of advances, Schultz and/or Landmark must pay Acker and/or Miracle Strip the sum of $2,983,272.  This is calculated as follows: (i) $1 million interest charged *less* $5,576 maximum lawful interest *equals* $994,424; *times* (ii) three, *equals* $2,983,272.

(b)     For their usurious charges in connection with their demand of $866,000 for the $433,000 of advances through the Conditional Agreement, Schultz and/or Landmark must pay Acker and/or Miracle Strip the sum of $1,213,302.72.  This is calculated as follows: (i) $433,000 interest charged less $28,565.15 maximum lawful interest equals $404,434.24; *times* (ii) three, *equals* $1,213,302.72.

(c)      For their usurious charges in connection with their demand of $1,015,000 for the $433,000 of advances, Schultz and/or Landmark must pay Acker and/or Miracle Strip the sum of $1,530,267.36.  This is calculated as follows: (i) $582,500

interest charged *less* $72,410.88 maximum lawful interest *equals* $510,089.12; *times* (ii) three, *equals* $1,530,267.36.

151.    Defendants also demand payment of reasonable attorney's fees set by the court under Texas Finance Code section 305.005.

## PRAYER FOR RELIEF

152.    WHEREFORE, Defendants/Counterclaimants respectfully pray for the following relief:

(a)    Final judgment declaring that Schultz and Landmark shall take nothing on their claims against Acker and Miracle Strip;

(b)    An award of damages and other relief under the Texas Finance Code, and any other damages or other sums to be proven at trial or in subsequent proceedings, against Schultz and Landmark jointly and severally in favor of Acker and Miracle Strip;

(c)    An order of pre-judgment and post-judgment interest, as supported by the evidence;

(d)    Attorney's fees and costs; and

(e)    One or more orders and a final judgment awarding Acker and Miracle Strip such other and further relief as the Court deems just and proper.

Dated:  March 9, 2018

Respectfully submitted:

The Majorie Firm Ltd.

By:  *Francis B. Majorie*
       Francis B. Majorie
       Thomas J. Annis
      1450 Cottonwood Valley Court
      Irving, Texas 75038
      Tel:  (214) 306-8107
      Fax: (214) 522-07911

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on this 9th day of March, 2018, a true and correct copy of

the foregoing was served counsel of record pursuant to the ECF system.

/s/ Thomas J. Annis
Thomas J. Annis